IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LINDSEY FORRESTER,<br>SARA SAMS, and<br>ANGELIEC WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>BUFFALO WILD WINGS, INC. and<br>BWW RESOURCES, LLC,<br><br>Defendants. | Case No. _____<br><br><br>JURY DEMAND |

## COMPLAINT

Plaintiffs Lindsey Forrester ("Ms. Forrester"), Sara Sams ("Ms. Sams"), and Angeliec Williams ("Ms. Williams") (collectively, "Plaintiffs") file this Complaint and allege as follows:

### I. INTRODUCTION

1. Defendants Buffalo Wild Wings, Inc. and BWW Resources, LLC (together, "BWW" or "Defendants") employed Plaintiffs as servers at a corporate-owned, non-franchised Buffalo Wild Wings restaurant (BWW #0222), located in Spring Hill, Tennessee.

2. From May to July 2023, Plaintiffs were each subjected to unwelcome, severe, and pervasive sexual harassment by their General Manager that was often frighteningly violent, including putting his hands around their necks and over their mouths and making graphic comments such as, "I want to throw you up against the wall," and, "I want to choke you."

3. When Plaintiffs reported this harassment, Defendants investigated their reports but failed to take any corrective action, telling Plaintiffs there was nothing they could do except have a "stern talk" with the General Manager.

4. Following these reports, it was revealed that General Manager "Jose Rodriguez"

1

was actually a violent, registered sex offender named Christopher Lawrence, who was "on the lamb" from New York, living under an assumed identity. This came to light when Mr. Lawrence was arrested, *at the restaurant*, for failing to register as a sex offender in Tennessee.

5. Despite this fact, Defendants continued to disbelieve Plaintiffs, resulting in the actual and constructive discharges of Ms. Williams and Ms. Forrester.

6. Therefore, Plaintiffs brings this civil action to redress unlawful employment practices under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 *et seq*. ("THRA"), as well as to redress Defendants' negligence in its hiring, training, supervision, and retention of Christopher Lawrence under Tennessee common law.

## II. JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction over Plaintiffs' Title VII claims in this matter pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiffs' THRA and negligence claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims within this Court's original jurisdiction that they form part of the same case or controversy.

9. This Court has specific personal jurisdiction over Defendants, which operate locations and employ employees, including Plaintiffs, in this District.

10. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## III. ADMINISTRATIVE PREREQUISITES

11. Plaintiffs have exhausted administrative remedies and complied with all statutory

prerequisites to their Title VII claims.

12. On October 10, 2023, each Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), on behalf of herself and others similarly situated, regarding the facts underlying this action.

13. The EEOC resolved its investigations and issued Determinations and Notices of Rights for each Charge on April 10, 2024, copies of which were served on Plaintiffs and Defendants.

## IV. THE PARTIES

14. Plaintiff Lindsey Forrester is a United States citizen and resident of Spring Hill, Williamson County, Tennessee.

15. Plaintiff Sara Sams is a United States citizen and resident of Michigan. At all relevant times to this action, she was a resident of Spring Hill, Tennessee.

16. Plaintiff Angeliec Williams is a United States citizen and resident of Spring Hill, Williamson County, Tennessee.

17. Defendant Buffalo Wild Wings, Inc. is a Minnesota for-profit corporation with its principal place of business located at 3 Glenlake Parkway, Atlanta, Georgia 30328-3584. It may be served with process through its statutory registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

18. Defendant BWW Resources, LLC is a Delaware limited liability company with its principal place of business located at 3 Glenlake Parkway, Atlanta, Georgia 30328-3584. It may be served with process through its statutory registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

19. At all relevant times, Defendants have continuously conducted business in Tennessee, including operating multiple restaurants and employing Plaintiffs.

20. At all relevant times, Defendants each employed 500 or more individuals.

21. At all relevant times, Defendants were each an "employer" and "covered entity" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the THRA, Tenn. Code Ann. § 4-21-102(5).

22. At all relevant times, Defendants operated as joint employers and/or an integrated enterprise, each of which had the authority to, and did, determine the terms and conditions of Plaintiffs' employments.

23. Joinder is appropriate pursuant to Federal Rule of Civil Procedure 20(a)(1) because Plaintiffs assert their rights to relief with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences committed by Defendants, and questions of law or fact common to all Plaintiffs will arise in the action.

## V.  FACTS

### A. Defendants' Negligent Hiring of Registered Sex Offender Christopher Lawrence

24. In or about late May 2023, Defendants hired a new General Manager for its Spring Hill, Tennessee restaurant (BWW #0222).

25. The candidate chosen was "Jose Rodriguez."

26. At the time of his hire, "Jose Rodriguez" had little experience with restaurant management but, upon information and belief, was chosen over other, more qualified candidates.

27. After his hire, Defendants failed to provide proper supervision and training to "Jose Rodriguez," including failing to properly train him regarding inappropriate workplace behavior and anti-discrimination, retaliation, and harassment policies and practices.

4

28. "Jose Rodriguez" was an alias used by Christopher Lawrence, a registered sex offender who was convicted of felony sexual contact with a minor in New York.[1]

29. At the time of his hire, Mr. Lawrence was living under a false identity and had failed to register as a sex offender in Tennessee.

30. Defendants knew or should have known about Mr. Lawrence's prior conviction and false identity at the time of his hiring, as such information was or should have been revealed by a background check and/or when verifying his identity and employee authorization, as required by federal law.

31. Throughout his employment, Mr. Lawrence posed an unreasonable and foreseeable risk toward Defendants' employees and customers, including Plaintiffs, who suffered from severe, violent, and frightening harassment, including physical assaults, by Mr. Lawrence, as detailed more below.

32. Even when Plaintiffs reported this harassment and Defendants' own internal investigation verified that Mr. Lawrence had engaged in inappropriate conduct, Defendants failed to take any action to properly train, supervise, or terminate Mr. Lawrence.

33. Defendants did not provide Mr. Lawrence any sexual harassment training after Plaintiffs' report and its investigation.

34. Defendants did not provide Mr. Lawrence any additional supervision after Plaintiffs' report and its investigation.

35. Rather, Defendants only action against Mr. Lawrence was to issue him a warning.

36. On or about July 22, 2023, Mr. Lawrence was arrested *while at work* at Defendants'

---

[1] *See* New York State, Division of Criminal Justice Services, Sex Offender Registry, "Lawrence, Christopher," *available at* https://www.criminaljustice.ny.gov/SomsSUBDirectory/offenderDetails.jsp?offenderid=12789&lang=EN (last visited Apr. 17, 2024).

5

restaurant for failing to register as a sex offender, a Class E felony. *See* Tenn. Code Ann. § 40-39-208.

37. Even after this, Defendants retained Mr. Lawrence as an employee, despite their actual knowledge of his false identity and the dangers he posed to, and had actually carried out against, its employees and customers, including Plaintiffs.

38. Mr. Lawrence was finally separated from Defendants of his own volition (due to "job abandonment") on July 31, 2023.

39. Defendants knew or should have known that Mr. Lawrence was unfit for the job for which he was hired, posed an unreasonable risk to others, and posed a likelihood of repetitive criminal behavior because his position gave him access to and complete authority over his preferred victims: young women like Plaintiffs.

40. As a result of Defendant's illegal actions, Plaintiffs have suffered economic and noneconomic damages, including lost wages and benefits, stress, inconvenience, humiliation, and mental, emotional, and physical distress.

B. **Plaintiffs' Employment by Defendants and Sexual Harassment by Mr. Lawrence**

41. At the time of Mr. Lawrence's hiring in May 2023, Plaintiffs were all long-serving and well-liked members of the team at Defendants' Spring Hill, Tennessee restaurant (BWW #0222).

42. Ms. Forrester was employed as a Server at BWW #0222 from October 2020 until August 2023. Throughout her employment, Ms. Forrester was only issued "coachings," never formal discipline, the last of which occurred in March 2023. Ms. Forrester received a 3 out of 4, the second-highest rating, on her April 2023 performance review.

43. Ms. Sams was employed as a Server at BWW #0222 from February 2021 until July

6

Case 3:24-cv-00600    Document 1    Filed 05/14/24    Page 6 of 16 PageID #: 6

2023. Ms. Sams was never issued any discipline during her employment and received a 3.25 out of 4, between the first- and second-highest ratings, on her February 2023 performance review.

44. Ms. Williams was employed as a Server at BWW #0222 from August 2018 until August of 2023. Prior to Mr. Lawrence's hiring, Ms. Williams' most recent "coaching" occurred in September 2020, while her most recent written warning occurred in November 2019. Ms. Williams received a 3 out of 4, the second-highest rating, on her February 2023 performance review.

45. Plaintiffs' longstanding and positive work experience changed drastically when Mr. Lawrence was hired.

46. At the time of his hire, Mr. Lawrence was 49 years old; Ms. Forrester was 21, Ms. Sams was 26, and Ms. Williams was 23.

47. While working with Mr. Lawrence, Plaintiffs both personally experienced and witnessed his inappropriate—and often graphic and violent—sexual conduct toward Plaintiffs and other employees, including inappropriate touching and physical assaults, making sexual remarks and comments, propositioning them, and engaging in stalking behavior.

48. Mr. Lawrence's behavior toward Plaintiffs was unwelcome.

49. Plaintiffs were each aware of both the conduct they themselves endured as well as the inappropriate actions toward each other and other female employees.

50. The conduct Plaintiffs witnessed, experienced, and knew about interfered with their jobs, affected their working conditions, and made them feel unsafe at work.

51. Ms. Williams was particularly targeted by Mr. Lawrence's behavior, to the point that Ms. Forrester became concerned for Ms. Williams' safety after Ms. Williams had a panic attack in the restaurant bathroom following on encounter with Mr. Lawrence.

52. On or about July 8, 2023, Ms. Forrester and Ms. Williams reported Mr. Lawrence's inappropriate actions to Defendants.

53. On or about July 9, 2023, District Manager David Haygood came to the restaurant to interview employees, including all three Plaintiffs.

54. Based on *Defendants' own records* of these interviews (which were compiled and signed by Mr. Haygood), the incidents of harassment by Mr. Lawrence reported by Plaintiffs to Mr. Haygood include, but are not limited to, the following:

    a. Making violent sexual remarks to Plaintiffs and other female employees, including grabbing Ms. Williams and telling her, "I want to throw you up against the wall," and, "I want to choke you," and telling another female employee in front of Ms. Sams, "If you went to prison, you'd be raped";

    b. Violently touching Plaintiffs and other female employees without consent, including grabbing Ms. Williams from behind, putting his hand over her mouth, and grabbing Ms. Williams and Ms. Sams by their necks;

    c. Touching the Plaintiffs' waists, shoulders, necks, hands, and hair without consent;

    d. Touching and whispering in the ears of Ms. Forrester and Ms. Williams without consent;

    e. Attempting to tickle Ms. Sams;

    f. Telling Ms. Williams, "I want a side of you" (when she requested a side of sauce for a customer);

    g. Propositioning Ms. Williams, including offering to pay her to go on vacation with him, asking him to leave work to go out with him, asking her to move to

Florida with him, telling Ms. Williams he wanted to see her outside of work, asking Ms. Williams to come to his car or house, buying unsolicited gifts for Ms. Williams and her son, and telling Ms. Williams he liked her so much he was willing to quit his job in order to date her;

h. Engaging in stalking behavior, including following female employees to their cars, following Ms. Williams around the restaurant, calling Ms. Williams at home "just to hear [her] voice," and making Ms. Williams' picture the background image on his *work* computer and Apple Watch; and

i. Witnessing Mr. Lawrence discussing his dating life at work, especially his use of the dating app Tinder.

55. Mr. Haygood also interviewed other employees, who verified many of these allegations.

56. Following Mr. Haygood's investigation, Defendants determined that Mr. Lawrence "engaged in inappropriate behavior by touching team members without permission and making inappropriate comments."

57. Nonetheless, it classified Plaintiffs' complaint as "unsubstantiated" and issued only a warning to Mr. Lawrence.

58. Mr. Lawrence returned to work the day after the investigation without further supervision or training.

59. No changes were made to the supervision of Plaintiffs; rather, Mr. Lawrence continued to be their direct supervisor.

C. **Plaintiffs' Separations**

60. Immediately following the investigation, Mr. Haygood told Ms. Forrester that he

would have a "stern talk" with Mr. Lawrence, but there was nothing else he could do. He told Ms. Forrester she was expected to return to work the next day, including opening the restaurant, meaning she would be alone with Mr. Lawrence. Ms. Forrester protested that she did not feel safe going back to work with Mr. Lawrence and therefore felt forced to resign, resulting in her actual or constructive discharge.

61. Meanwhile, Ms. Sams, who had already turned in her resignation in order to move back to Michigan, similarly felt unsafe at work. She worked out her notice and left the restaurant.

62. Finally, Ms. Williams, who had a young son to support and was also enrolled in school, felt she had no choice but to continue working at the restaurant despite the unsafe working conditions.

63. Mr. Lawrence immediately retaliated against Ms. Williams, including changing her work schedule to interfere with her class schedule and asking her to come in early on days when it was impossible for her to make it to the restaurant by the scheduled time due to the distance she was required to travel.

64. If Ms. Williams could not make it to work on time for these reasons, Mr. Lawrence would tell her not to come into work at all, depriving her of a day of pay, and/or issue disciplinary action against her.

65. Mr. Lawrence personally issued written discipline related to tardiness or absences to Ms. Williams on July 8, 2023 (the same day as her complaint) and July 15, 2023 (one week later).

66. Despite the fact that Ms. Williams had been issued no disciplinary action for nearly three years before this (*see* ¶ 44, *supra*), Mr. Lawrence categorized the first disciplinary action as a "Written Warning" and the second as a "Final Warning," in violation of Defendants' progressive

discipline policy.

67. Ms. Williams was terminated for tardiness/absences on August 18, 2023, based on her continuing inability to comply with the retaliatory schedule set by Mr. Lawrence.

68. By the time of Ms. Williams' termination, Mr. Lawrence's harassment had been substantiated by Mr. Haygood's investigation, his false identity and criminal history had been confirmed through his arrest *while at work*, and he no longer worked for BWW #0222 due to his own "job abandonment."

69. Nevertheless, Ms. Williams' termination stated that it was based on "previous documentations," referring to the retaliatory write-ups by Mr. Lawrence.

70. Likewise, the acting General Manager who carried out her termination told Ms. Williams that he had no choice but to fire her due to her prior write-ups by Mr. Lawrence.

71. Mr. Haywood—the very same person who investigated Plaintiffs' complaint—approved Ms. Williams' termination.

72. By subjecting Plaintiffs to a sexually hostile work environment and conditioning their employment on submitting to such harassment, Defendants violated Title VII and the THRA.

73. By retaliating against Plaintiffs for refusing to submit to harassment, advocating for themselves and each other, and opposing and refusing to participate in discrimination, harassment, and retaliation, Defendants violated Title VII and the THRA.

74. By actually and/or constructively terminating the employments of Ms. Forrester and Ms. Williams, Defendants violated Title VII and the THRA.

75. As a result of Defendant's illegal actions, Plaintiffs have suffered economic and noneconomic damages, including lost wages and benefits, stress, inconvenience, humiliation, and mental, emotional, and physical distress.

## VI. CAUSES OF ACTION

### A. Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 *et seq.* (Hostile Work Environment, Quid Pro Quo, Discrimination, and Retaliation)

76. Plaintiffs incorporate the forgoing facts as if fully restated herein.

77. Title VII and the THRA prohibit an employer from taking adverse employment actions against an employee or discriminating against an employee in the terms and conditions of employment because of her sex. 42 U.S.C. § 2000e *et seq.*; Tenn. Code Ann. § 4-21-401 *et seq*.

78. Title VII and the THRA further prohibit an employer from taking adverse employment actions against or discriminating against an employee because she opposes unlawful discrimination, because she participates in activity opposing discrimination, or because she advocates on behalf of individuals protected under Title VII or the THRA. 42 U.S.C. § 2000e-3; Tenn. Code Ann. § 4-21-301.

79. Defendants violated Title VII and the THRA by discriminating against Plaintiffs because of their sex and for retaliating against them for opposing such discrimination, participating in activity opposing discrimination, and/or advocating on behalf of themselves and other women.

80. The discriminatory and harassing conduct Plaintiffs experienced was both subjectively unwelcome and offensive to Plaintiffs and would be objectively unwelcome and offensive to a reasonable person in Plaintiffs' position.

81. First, Defendants created a harassing and hostile work environment based on Plaintiffs' sex through Mr. Lawrence's severe, pervasive, and unwelcome sexual harassment that affected Plaintiffs' terms and conditions of employment.

82. Second, Defendants affected the terms and conditions of Plaintiffs' employment based on their sex through Mr. Lawrence's *quid pro quo* demands by predicating their success and continued employment on their acquiescence to this harassment.

83. Third, Defendants retaliated against Plaintiffs for opposing sexual harassment and sex discrimination on behalf of themselves and other female employees.

84. As a result of Defendants' illegal actions, Ms. Forrester was actually or constructively discharged.

85. As a result of Defendants' illegal actions, Ms. Williams was actually discharged.

86. Defendants are vicariously liable for the actions of their managers within the scope of their employment as well as directly liable for their own discriminatory actions.

87. As a proximate result of Defendants' actions, Plaintiffs been and continue to be damaged in amounts to be determined at trial.

88. Plaintiffs are entitled to punitive damages because Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to Plaintiffs' federally protected rights, including but not limited to recognizing but ignoring Mr. Lawrence's behavior.

### B. Common Law Negligence
**(Negligent Hiring, Negligent Supervision, Negligent Training, and Negligent Retention)**

89. "Tennessee courts recognize the negligence of an employer in the selection and retention of employees and independent contractors." *Doe v. Catholic Bishop for the Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).

90. Claims for different types of negligence in the employment context "are independent of claims based on respondeat superior, and the existence of one [negligence] claim does not render the other claim superfluous or unnecessary." *Gunter v. Estate of Armstrong*, 600 S.W.3d 916, 928 (Tenn. Ct. App. 2019).

91. Defendants knew or should have known about Mr. Lawrence's prior conviction for a violent sexual offense at the time of his hiring, as such information was or should have been revealed by a pre-employment background check and/or when verifying his identity and employee authorization, as required by federal law.

92. Defendants knew or should have known that Mr. Lawrence was unfit for the job for which he was hired, posed an unreasonable risk to others, and posed a likelihood of repetitive criminal behavior because his position gave him access to and complete authority over his preferred victims: young women like Plaintiffs.

93. Despite the foreseeable risks he posed, Defendants hired and failed to properly train and supervise Mr. Lawrence in carrying out his duties.

94. Due to Defendants' failures in hiring, training, and supervising Mr. Lawrence, he was allowed to carry out severe sexual harassment of Plaintiffs and other female subordinates for months, even after Plaintiffs reported his behavior.

95. Further, Defendants improperly retained Mr. Lawrence as an employee, even after his actual behavior toward their employees was reported and confirmed by their own internal investigation and his criminality and false identity were confirmed by his arrest.

96. Mr. Lawrence's propensity for inappropriate and violent sexual conduct toward young women, and the harms suffered by Plaintiffs as a result, were or should have been known to and foreseeable by Defendants.

97. Defendants' negligence in hiring, training, supervising, and retaining Mr. Lawrence breached their duty to hire and retain competent employees and supervise them appropriately.

98. Moreover, Defendants' negligence in hiring, training, supervising, and retaining Mr. Lawrence breached Defendants' duty of care to Plaintiffs as employers to their employees.

99. Defendants' negligence in hiring, training, supervising, and retaining Mr. Lawerence was the proximate cause of Plaintiffs' injuries.

100. Defendants are vicariously liable for the actions of their managers within the scope of their employment as well as directly liable for their own negligent actions.

101. As a proximate result of Defendants' actions, Plaintiffs been and continue to be damaged in amounts to be determined at trial.

102. Plaintiffs are entitled to punitive damages because they can prove by clear and convincing evidence that Defendants actions, or failures to act, were done maliciously, intentionally, fraudulently, or recklessly.

## VII. PRAYER FOR RELIEF

103. Based on the foregoing, Plaintiffs pray for the following relief:

   A. That they be awarded damages in the amount of any wages, salary, employment benefits, or other compensation, including, but not limited to back pay and front pay, plus pre- and post-judgment interest;

   B. Lost future earnings;

   C. Compensatory damages, including medical expenses;

   D. Punitive damages;

   E. Reasonable attorneys' fees;

   F. The costs and expenses of this action;

   G. An offset to mitigate the tax burden of any lump sum award;

   H. Injunctive relief barring Defendants from undertaking such discriminatory practices against other employees, mandating discrimination and harassment prevention training, ensuring proper verification of employment as required by

federal law, and taking other such injunctive action as the Court finds appropriate;

I. Such other legal and equitable relief to which Plaintiffs may be entitled; and

J. A jury to try this cause.

Respectfully submitted,

*s/ Caraline E Rickard*
Caraline E. Rickard, TN Bar No. 034414
Curt M. Masker, TN Bar No. 037594
RICKARD MASKER, PLC
810 Dominican Drive, Suite 314
Nashville, Tennessee 37228
Telephone: (615) 200-8389
Facsimile: (615) 821-0632
caraline@maskerfirm.com
curt@maskerfirm.com

*Counsel for Plaintiffs*